UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

IN RE:

BUFFETS, LLC, et al.,                                    Bankruptcy Case No. 16-50557-RBK

        **Debtors.**

_____

BUFFETS, LLC, et al.,

        **Appellants,**

v.                                                        Case No. SA-19-CV-0216-JKP

CALIFORNIA FRANCHISE                         (Appeal from Orders in
TAX BOARD,                                         Bankruptcy Case No. 16-50557-RBK)

        **Appellee.**

## MEMORANDUM OPINION AND ORDER

Pursuant to 28 U.S.C. § 158(a)(1), Appellant Buffets, LLC, ("Buffets" or "Appellant") and its affiliated entities (collectively referred to as "Reorganized Debtors") appeal two orders of the Bankruptcy Court issued February 15, 2019. In the first order, the Bankruptcy Court granted a motion for summary judgment filed by Appellee, California Franchise Tax Board ("FTB" or "CFTB") and allowed its Claim 1632 "as a priority tax claim in the amount of $856,626.28." *See* ECF No. 3-13 (D. 23; Bankr. ECF No. 4223).[1] The second order merely denied the Reorganized Debtors' cross-motion for summary judgment. *See id.* (D. 24; Bankr. ECF No. 4224).

Having considered the issues raised in this appeal, the arguments of the parties, the relevant

---

[1] The Bankruptcy Record on Appeal (ECF No. 3) contains fourteen attachments. Appellant's Designation of Items to be Included in the Record on Appeal (ECF No. 3-1) lists its designations. In general, the Court will cite to the designations and other documents filed in this appeal by the ECF docket number. At times, it will use "D." to refer to a specific designation by number, which are found in the thirteen other attachments (ECF No. 3-2 through 3-14) to the Bankruptcy Record. The Court may also include the document number for filings in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, Bankruptcy Petition No. 16-50557-RBK.

portions of the record, and the applicable principles of law, the Court finds no need for oral argument and, for the reasons that follow, it **AFFIRMS** the Bankruptcy Court's orders.

## I. BACKGROUND

This appeal concerns treatment of a governmental entity's claim for overdue franchise taxes in a third Chapter 11 bankruptcy filed by Buffets and its affiliates ("Buffets III").[2] In Claim 1632, FTB asserts that Buffets owes more than $856,626.28 in back taxes, and that those taxes are entitled to payment priority. The tax liabilities that are the subject of Claim 1632 are for the tax years ending 2000, 2002, 2005, 2006.

These tax liabilities have a long and highly litigated history. On December 5, 2007, FTB issued a notice of proposed assessment regarding the 2006 taxes, which was not protested. ECF No. 3-8 at 6, ¶ 6. Buffets first filed for bankruptcy on January 22, 2008, in Delaware ("Buffets I"). That filing invoked an automatic stay precluding FTB from pursuing collection of pre-petition taxes. *See* 11 U.S.C. § 362(a). Shortly thereafter, the 2006 tax assessment became final by operation of California law. *See* Cal. Rev. & Tax Code § 19042 (providing for finality of tax assessment following expiration of a sixty-day period when no protest had been filed); *accord* ECF No. 11 at 17; ECF No. 12 at 15-16. In Buffets I, FTB claimed priority for tax years 1997 through 2006. On March 30, 2009, FTB issued a notice of proposed assessment regarding the 2005 taxes, which also was not protested, *see* ECF No. 3-8 at 6, ¶ 5, and thus became final by operation of California law sixty days later. *See* ECF No. 11 at 17; ECF No. 12 at 15.

Buffets contested the priority and initiated an adversary proceeding on April 13, 2009, challenging the claims. ECF No. 3-9 at 161-71. The Delaware Bankruptcy Court confirmed a

---

[2] The entities that comprise Buffets have changed since the two prior bankruptcies. Those changes are immaterial to resolving the issues in this appeal.

reorganization plan (the "Buffets I Plan")[3] on April 17, 2009. *Id*. at 48-96. The plan provided for allowed priority tax claims to be paid in full over five years. *Id*. at 121 (Article III.D). At the time, however, FTB's tax claims were not allowed and it was enjoined from collecting on the claims through the injunction within the confirmation order. That injunction enjoined prepetition creditors from collecting on their claims, "[e]xcept as otherwise expressly provided in the Plan, [the confirmation order], Plan Supplemental Documents, or a separate order of the Court." *Id*. at 69-70, ¶ 34. Following a bankruptcy ruling on August 15, 2011, Buffets appealed. *Id*. at 41.

While that appeal was pending, Buffets filed for bankruptcy on January 18, 2012, in Delaware ("Buffets II"). FTB again asserted its claims for priority, which include all claims it previously sought in Buffets I as well as all claims that it would ultimately seek in Buffets III. This second bankruptcy action again invoked an automatic stay under 11 U.S.C. § 362(a) that precluded FTB from collecting the tax debt. The Delaware Bankruptcy Court confirmed a plan of reorganization in Buffets II on June 27, 2012. ECF No. 3-9 at 193-245. Attached to that confirmation order, as Exhibit A, is the Debtor's Second Amended Joint Plan of Reorganization. *See* ECF No. 3-9 at 247-309. This confirmed reorganization plan includes the following provision addressing "Priority Tax Claims":

> Except to the extent that a holder of an Allowed Priority Tax Claims agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Reorganized Debtors, (a) Cash in an amount equal to such Allowed Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable, but no later than thirty (30) days after the Effective Date, or (b) through equal annual installment payments in cash (i) of a total value, as of the Effective Date of the Plan, equal to the allowed amount of such Claim; (ii) over a period ending not later than 5 years after the Petition Date; and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan.

---

[3] This confirmed plan is found in ECF No. 3-9 at 98-157.

ECF No. 3-9 at 270 (Article III.D, D. 14; Bankr. ECF No. 3934). The plan also includes a provision addressing "Objections to and Resolution of Claims" that gives the Reorganized Debtors "the exclusive right to make and to file objections" regarding certain claims. *Id*. at 283 (Article VII.G.2). That provision permits the debtors to settle objections with or without court approval. *Id*. These Buffets II Plan provisions essentially carry over similar provisions from the Buffets I Plan. *Compare* ECF No. 3-9 at 121 (Article III.D), 135 (Article VIII.F.2) *with* ECF No. 3-9 at 270 (Article III.D), 283 (Article VII.G.2).

The order confirming the Buffets II Plan provides that "[a]s of the [Buffets II] Effective Date, the stay imposed pursuant to section 362(a) of the Bankruptcy Code shall be dissolved and of no further force and effect, subject to the injunction set forth herein and/or sections 524 and 1141 of the Bankruptcy Code." ECF No. 3-9 at 213, ¶ 35. That paragraph also contains some exceptions not relevant here. *See id.* The referenced injunction provides in pertinent part that "[e]xcept as otherwise expressly provided in the Plan, [the Confirmation] Order, or a separate order of the Court, all entities who have held, hold or may hold Claims against the Debtors that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from [various listed activities, including collecting the tax debt]." *Id*. at 212, ¶ 34. The confirmation order also states:

> Payment of Allowed Other Secured Claims and Other Priority Tax Claims. Upon the failure of the Debtor to make any payment due on an Allowed Priority Tax Claim…in accordance with the Plan that is not cured within fifteen days of mailing of a written notice of default by the creditor, such creditor may exercise all rights and remedies available under nonbankruptcy law for the collection of its entire claim and/or seek appropriate relief in this Court.

*Id*. 240, ¶ 83. Buffets contends that the confirmed plan for Buffets II became effective on July 18, 2012. *See* ECF No. 11 at 20, 28.

Following that reorganization confirmation, the parties negotiated and entered into a

4

stipulation to resolve the Buffets I and II FTB claims with an allowed priority claim in Buffets II. *See* ECF No. 3-9 at 37-45 ("the Stipulation"). After "engag[ing] in extensive and good-faith negotiations regarding the Buffets I Claims, the Buffets II Claims, and the matters in the Adversary Proceeding," the parties "proposed a resolution of all such matters" as set forth in the Stipulation. *Id*. at 42. Based on provisions of Buffets I Plan (Article VIII.F.2) and the Buffets II Plan (Article VII.G.2), the parties were "authorized to enter into this Stipulation in their sole discretion and without the need to obtain Bankruptcy Court approval." *Id*. According to the Stipulation, FTB had one priority claim for various tax years, including the four at issue in Buffets III. *See id.* 40-43. The Stipulation sets a payment plan with various payments due on January 18 in each of the following years: 2014, 2015, 2016, and 2017. *Id*. at 43, ¶ 5. More particularly, ¶ 5 states that "FTB will receive" these "payments on or prior" to January 18 of the respective years. *Id*. Additionally, the Stipulation provides:

> Should the Buffets II Debtors or their successors in interest default by failing to timely make any of the payments described in paragraph 5 hereof, the remaining obligations hereunder shall be accelerated, and California FTB shall be entitled to take any and all actions available under state law to collect any unpaid amounts from the Buffets II Debtors, their successors in interest or any or all of them without further relief from the Bankruptcy Court.

*Id*. at 44, ¶ 7. "The Stipulation contains the entire agreement among the Parties and supersedes all prior agreements or undertakings among the Parties, relating to the subject matter hereof." *Id*. ¶ 12.

The Delaware Bankruptcy Court that jointly administered Buffets I (Case No. 08-10441 (MFW)) and Buffets II (Case No. 12-10237 (MFW)) along with the adversary proceeding (Adversary No. 09-50894 (MFW)), approved the Stipulation and dismissed the adversary proceeding on August 1, 2013.[4] *Id*. at 34-35. In doing so, it recognized that the parties had entered into the

---

[4] The Delaware Bankruptcy Court signed the order on August 1, 2013, *see* ECF No. 3-9 at 35, but the parties state the

Stipulation "to resolve the Adversary Proceeding, the Buffets I Claims and Buffets II Claims." *Id.* at 35. At this point, FTB assessed the tax liabilities for 2000 and 2002. *See* ECF No. 11 at 17; ECF No. 12 at 14-15.

Buffets mailed the 2014 and 2015 installments to FTB on the last business day prior to the due date. *See* ECF No. 11-11 at 116, ¶¶ 6-8. The person in charge of "handling compliance with Buffets' tax obligations, including the Stipulation," placed the payments "in the mail on the day prior to the due date" because she "wanted to make sure the envelopes were post marked on or prior to the due date." *See id.* ¶¶ 4-6. She believed "that placing the checks" in the mail "was sufficient under the Stipulation." *See id.* ¶ 9. FTB submits that Buffets timely made the payments required under Stipulation ¶ 5 due in 2014, 2015, and 2016. *See* ECF No. 3-8 at 114, ¶¶ 8, 10.

On March 7, 2016, Buffets commenced its third Chapter 11 bankruptcy. *See* ECF No. 3-3 (D. 2; Bankr. ECF No. 1). On October 21, 2016, FTB filed an amended proof of claim asserting a priority for Claim 1632 in the amount of $856,626.28 – the amount of back taxes it would have been paid in the last payment under the Stipulation. *See* ECF No. 3-5 (D. 4 (as supplemented ECF No. 10-2)). Buffets did not make the 2017 payment required under Stipulation ¶ 5. *See* ECF No. 3-8 at 114, ¶¶ 8, 10; ECF No. 11 at 25. And the parties do not dispute that collecting such payment was automatically stayed as a result of the filing of Buffets III. *See* ECF No. 11 at 25.

After receiving extensive briefing and conducting a lengthy hearing, the bankruptcy court issued a brief order granting summary judgment in favor of FTB and a one-page order denying a cross-motion for summary judgment. *See* ECF No. 3-13 at 23-25 (D. 23-24; Bankr. ECF No. 4223 and 4224). The order granting summary judgment contains the following substantive paragraphs:

> 1. Section 507(a)(8) of the Bankruptcy Code gives priority to unsecured tax claims of governmental units if the taxes are measured by income or gross receipts for a

---

date as August 2, 2013. The date difference appears to be due to the date the order was entered versus when it was signed. *See* ECF No. No. 3-9 at 6, ¶ 3. In any event, this one-day difference makes no difference to this appeal.

taxable year on or prior to the bankruptcy petition date. The statute provides a three-year look back period for returns due within three years before the petition date. Additionally, the statute contains a hanging paragraph[5] that tolls the limitations period during offers of compromise and "any time during which a stay of proceedings against collections was in effect in a prior case under this title during that 240-day period, plus 90 days." 11 U.S.C. § 507(a)(8)(A)(i)-(ii).

2. The California Franchise Tax Board ("FTB") filed several proofs of claim in the first Buffets bankruptcy case ("Buffets I"). On April 13, 2009, the Debtors filed an Adversary Proceeding to object to the FTB's claims. The Adversary Proceeding carried over into the Debtors' second bankruptcy case ("Buffets II"). This continuation resulted in the FTB's inability to collect on the debt in Buffets I.

3. The parties entered into a Stipulation Order on August 2, 2013 in Buffets II. The Stipulation Order allowed the FTB's priority tax claim to be paid over five years. The confirmed plan listed the claims as priority claims, so the Stipulation Order provided for a five-year payment agreement of the priority claims. The Debtors made payments under the Order until the filing of the third bankruptcy case in this Court on March 7, 2016. As of March 7, 2016, the Debtors owed the remaining balance in the Stipulation Order of $886,809.63. The FTB's Proof of Claim No. 1632 in this case is for $856,626.28. This amount only includes computed interest up to the petition date, rather than the original payment date of January 18, 2017, which explains why the amount is less than originally provided for in the Stipulation Order.

4. The automatic stay in each case, the injunction contained in the confirmed plans in both Buffets I and Buffets II, and the Stipulation Order prevented the FTB from collecting on the debt in any manner other than provided for in the order and plan. There are no genuine issues of material fact with regard to the allowance of Claim No. 1632. Therefore, the hanging paragraph of § 507(a)(8) applies and Claim No. 1632 is entitled to priority.

*Id*. at 23-24 (footnoted added).

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a), which provides district courts with the authority to hear appeals from final judgments and orders of bankruptcy judges. "When reviewing a bankruptcy court's decision in a 'core proceeding,' a district court functions as a[n] appellate court and applies the standard of review generally applied in

---

[5] Courts and litigants also refer to the paragraph "as the 'unnumbered paragraph,' the 'flush paragraph,' [or] the 'suspension paragraph.'" *Tenholder v. United States*, No. 17-CV-1310-DRH, 2018 WL 4403819, at *1 n.2 (S.D. Ill. Sept. 17, 2018). The Court will utilize the same phrase as the parties and Bankruptcy Court.

federal court appeals." *First Nat'l Bank v. Crescent Elec. Supply Co.*, 713 F.3d 285, 293 (5th Cir. 2013) (quoting *Webb v. Reserve Life Ins. Co.*, 954 F.2d 1102, 1103-04 (5th Cir. 1992)). As recognized in *Webb*, "[a] core proceeding is one that invokes a substantive right provided by Title 11 [of] the Bankruptcy Code or is a proceeding that by its nature could arise only in the context of a bankruptcy case." 954 F.2d at 1103 n.1 (citation and internal quotation marks and brackets omitted). Issues of claim priority are core proceedings. *Id*.

Courts review a bankruptcy court's findings of fact under the clearly erroneous standard, but review questions of law *de novo*. *Saenz v. Gomez*, 899 F.3d 384, 390 (5th Cir. 2018); *Wiggains v. Reed*, 848 F.3d 655, 660 (5th Cir. 2017); *Thaw v. Moser*, 769 F.3d 366, 368 (5th Cir. 2014); *Whitley v. Cage*, 737 F.3d 980, 985 (5th Cir. 2013). "A finding of fact is clearly erroneous only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *Robertson v. Dennis*, 330 F.3d 696, 701 (5th Cir. 2003) (citation and internal quotation marks omitted).

Appellate courts review summary judgment rulings *de novo*. *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019). Furthermore, a "bankruptcy court's interpretation of a statute is a question of law." *United States v. Montgomery*, 475 B.R. 742, 746 (D. Kan. 2012) (citing *Office of Thrift Supervision v. Overland Park Fin. Corp.*, 236 F.3d 1246, 1251 (10th Cir. 2001)). And this includes whether the priority period under § 507(a)(8) should be tolled. *See United States v. Pastula*, 227 B.R. 794, 795 (E.D. Mich. 1997).

### III. ISSUES RAISED ON APPEAL

Stated generally, the issues raised in this appeal are whether the Bankruptcy Court erred in determining that FTB's Claim 1632 qualified as a priority claim under 11 U.S.C. § 507(a)(8)(A)(i) or (ii) and thus erred in granting FTB's motion for summary judgment and denying the cross-motion filed by Buffets. More particularly, Buffets asserts the following issues:

> 1. Whether the Bankruptcy Court erred when it determined that the Hanging Paragraph applied after the August 2013 Stipulation and tolled the time periods set forth in § 507(a)(8)(A)(i) and (ii).
>
> 2. Whether the Bankruptcy Court erred when it failed to find the Hanging Paragraph inapplicable to repeat Chapter 11 bankruptcy filers.
>
> 3. If the Hanging Paragraph applied after the Stipulation's court approval in August 2013, whether the Bankruptcy Court erred when it failed to find that Buffets had defaulted under the terms of the Stipulation by failing to make timely payments.
>
> 4. If the Hanging Paragraph applied after the Stipulation's court approval, whether the Bankruptcy Court erred when it failed to find a disputed issue of material fact with respect to whether Buffets defaulted under the terms of the Stipulation such as to preclude the granting of summary judgment in favor of FTB.

## IV. ANALYSIS

This appeal requires the Court to determine the applicability of the Hanging Paragraph of 11 U.S.C. § 507(a)(8) to the time limitations set forth in § 507(a)(8)(i) and (ii) within the context of the facts of this case. Whether FTB's tax claim is entitled to priority in Buffets III depends on the interpretation and application of the Hanging Paragraph.

"The Bankruptcy Code affords eighth priority to specified 'allowed unsecured claims of governmental units, only to the extent that such claims' fall within an enumerated category of taxes." *United States v. Chesteen*, 799 F. App'x 236, 239 (5th Cir. 2020) (per curiam) (quoting 11 U.S.C. § 507(a)(8)). In this appeal, the government unit, FTB, contends that it has priority under § 507(a)(8)(A). That provision accords priority status to certain unpaid taxes "if the liabilities are: (i) less than three years old; (ii) assessed within 240 days before the commencement of the bankruptcy case; or (iii) still assessable at the time the bankruptcy petition is filed." *Hosack v. IRS*, 282 F. App'x 309, 315 (5th Cir. 2008) (per curiam). The parties agree that the taxes that are the subject of FTB's claim qualify for priority status if any § 507(a)(8)(A) time requirement is met.

The first of these alternatives provides a "three-year lookback period" that is "subject to traditional principles of equitable tolling." *Young v. United States*, 535 U.S. 43, 47 (2002). The

9

second alternative provides a 240-day lookback period from date of tax assessment exclusive of (1) "any time during which an offer in compromise with respect to that tax was pending or in effect during that 240-day period, plus 30 days; and" (2) "any time during which a stay of proceedings against collections was in effect in a prior case under this title during that 240-day period, plus 90 days." The third alternative covers unassessed, but assessable taxes.

All three alternatives are subject to the following provision described in this case as the Hanging Paragraph:

> An otherwise applicable time period specified in this paragraph shall be suspended for any period during which a governmental unit is prohibited under applicable nonbankruptcy law from collecting a tax as a result of a request by the debtor for a hearing and an appeal of any collection action taken or proposed against the debtor, plus 90 days; plus any time during which the stay of proceedings was in effect in a prior case under this title or during which collection was precluded by the existence of 1 or more confirmed plans under this title, plus 90 days.

"In 2005, as a part of the Bankruptcy Abuse Prevention and Consumer Protection Act . . . Congress added the Suspension Paragraph, the unnumbered paragraph after § 507(a)(8)(G) quoted above." *In re Montgomery*, 446 B.R. 475, 480 (Bankr. D. Kan. 2011), *aff'd sub nom. United States v. Montgomery*, 475 B.R. 742 (D. Kan. 2012). In enacting this language, Congress not only "intended to codify the rule established in *Young*," but also "went beyond merely codifying *Young*." *In re USA Sales, Inc.*, 580 B.R. 852, 860 (Bankr. C.D. Cal. 2018). Through this paragraph, Congress "both codified and expanded the rule of *Young*." *In re Spinks*, 591 B.R. 113, 122-23 (Bankr. S.D. Ga. 2018).

Because "nothing in the Bankruptcy Code precludes serial Chapter 11 filings," courts have had to interpret bankruptcy provisions "in a manner true to underlying bankruptcy policies." *In re Official Comm. of Unsecured Creditors of White Farm Equip. Co.*, 943 F.2d 752, 757 (7th Cir. 1991). And prior to the enactment of the Hanging Paragraph, the Seventh Circuit held persuasively that incorporating tax debts into confirmed reorganization plans does not strip the debt of their

underlying character or transform them into contractual obligations. *See id.* Accordingly, priority "tax claims contained in a confirmed reorganization plan" still "embody the characteristics that may entitle them to priority treatment if a second Chapter 11 petition is filed." *United States v. Conston, Inc.*, 181 B.R. 769, 780 (D. Del. 1995). Those characteristics permit but do not mandate that the tax claims retain priority status in a later bankruptcy case because "the bankruptcy created characteristic of priority does not exist beyond the bankruptcy case in which it was created" and the claim must be entitled to priority in the existing bankruptcy case, including satisfaction of § 507(a)(8). *Id*. Nothing in the subsequent enactment of the Hanging Paragraph erodes the persuasiveness of these non-binding cases.

The parties do not dispute that bankruptcy stays or injunctions prevented FTB from collecting any portion of Claim 1632 through the date the Delaware bankruptcy court approved the parties' Stipulation. *See* ECF No. 11 at 28; ECF No. 12 at 32. The primary issue is the extent, if any, that FTB remained precluded from collecting the tax debt after that approval. As framed by Buffets, "the questions in this appeal are whether the lookback period continued to be tolled at all and, if so, for how long after the Stipulation became effective." ECF No. 11 at 15.

The Bankruptcy Court in this case undoubtedly found that the Hanging Paragraph applied and tolled the limitations periods of § 507(a)(8) both "during offers of compromise" and for any period "during which a stay of proceedings against collections was in effect in a prior case under this title during that 240-day period, plus 90 days.'" ECF No. 3-13 at 23-24. It noted the August 2013 Stipulation, stated that the debtors had "made payments under" that Stipulation "until the filing of the third bankruptcy case," and found that "[t]he automatic stay in each case, the injunction contained in the confirmed plans in both Buffets I and Buffets II, and the Stipulation Order

prevented the FTB from collecting on the debt in any manner other than provided for in the order and plan." *Id*. at 24.

**A. Serial Chapter 11 Bankruptcies**

Because Congress enacted the hanging paragraph in response to *Young*, which provided for equitable tolling in the context of chapter 13 cases, Buffets argues that the hanging paragraph is inapplicable in serial Chapter 11 bankruptcy cases. However, Buffets identifies no authority for such limitation. It in fact acknowledges that such argument presents a case of first impression. *See* ECF No. 11 at 27. But nothing in the statute supports the argument. In fact, § 507(a)(8)(A)(ii)(II) and (iii), as well as the final sentence of the Hanging Paragraph, specifically refer to "this title," thereby referencing Title 11 of the Bankruptcy Code in general, not any specific chapter within Title 11. Such references to Title 11 cuts against the proposed limitation.

When courts construe and interpret a statute, they "must first determine whether the statutory text is plain and unambiguous." *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009). "It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000)). "If the statutory text is unambiguous, [the courts'] inquiry begins and ends with the text." *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 622 (5th Cir. 2013) (citing *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004)). When "a statute's text is 'plain and unambiguous, it must be given effect.'" *Christiana Tr. v. Riddle*, 911 F.3d 799, 806 (5th Cir. 2018) (quoting *BMC Software, Inc. v. C.I.R.*, 780 F.3d 669, 674 (5th Cir. 2015)).

The Court finds that the plain language of the statute does not support the limitation requested by Buffets. Accordingly, it declines to find that the applicability of the Hanging Paragraph

depends on the type of bankruptcy case at issue, i.e., Chapter 11 versus 13. Such interpretation does not lead to any absurd disposition. This resolves Issue 2 presented in this appeal.

## B. Effect of Stipulation on Tolling

The Court also finds no legal error in the Bankruptcy Court finding the Hanging Paragraph applicable to toll the limitations periods. Buffets argues that the Stipulation controls once the Delaware Bankruptcy Court approved it in August 2013. However, the Stipulation does not expressly override the prior plans and confirmation orders. The parties entered into the Stipulation through provisions of the Buffets I and II Plans. At least to that extent, the Stipulation relies on the prior plans. Those provisions permit the debtors to settle objections and take various other actions with or without court approval. Similarly, the "Priority Tax Claims" provisions of the two plans authorized FTB and Buffets to enter into agreements to modify how FTB was to be paid. While the Stipulation settled the adversary proceeding, gave FTB an allowed priority claim under the Buffets II Plan, fixed the amount of FTB's claim, and set an installment payment schedule consistent with the plans' treatment of allowed priority claims, it did not lift any previously imposed injunction or allow FTB to freely collect its tax debts. Arguments to the contrary are simply unpersuasive and not supported by the record as a whole.

Buffets places much reliance on ¶ 7 of the Stipulation, which provides for accelerated payment of any remaining obligations should there be a "default by failing to timely make any of the payments described in paragraph 5." ECF No. 3-9 at 44. However, such acceleration is perfectly consistent with the "Priority Tax Claims" provisions. Without an agreement between the parties, Buffets had the unilateral right to choose whether to pay a lump sum or make equal installment payments. *See id.* at 270. The court order approving the Stipulation does not expressly address any plan injunction. Further, ¶ 7 does not expressly replace or nullify any injunction.

As drafted and approved, ¶ 7 resembles ¶ 83 of the Buffets II Confirmation Plan. Paragraph 83 expressly provides that a debtor's failure "to make any payment due" permits (but does not require) the creditor to "exercise all rights and remedies available under nonbankruptcy law for the collection of its entire claim" without further relief from the Bankruptcy Court. *See id.* at 240, ¶ 83. By the terms of the injunction, this express provision within the confirmation plan modifies the injunction. Thus, although ¶ 7 similarly provides that a default would entitle FTB "to take any and all actions available under state law to collect any unpaid amounts . . . without further relief from the Bankruptcy Court," *id.* at 44, the Stipulation provision is simply consistent with ¶ 83 to that extent. And, like ¶ 83, the Stipulation does not require FTB to take any collection action even upon default by Buffets. While ¶ 7 does not include the requirement within ¶ 83 that the creditor provide "written notice of default" to the debtor and a fifteen-day period for the debtor to cure the default, the paragraph importantly does not expressly eliminate that requirement.

Because the relevant injunction enjoins creditors from taking specific actions against debtors "[e]xcept as otherwise expressly provided in the Plan, [the Confirmation] Order, or a separate order of the Court," ECF No. 3-9 at 212, the Bankruptcy Court properly found that the approved Stipulation did not rescind the injunction. Nor did the Stipulation affect the ¶ 83 modification of the injunction.

Buffets misses the point when it argues that "[a]bsent from the Stipulation is any language that enjoined CFTB from collecting or that an automatic stay or a plan injunction remained in place if a default occurred." ECF No. 15 at 6. The governing injunction requires express language to alter its terms. An absence of language does not suffice as expressly altering the terms of the injunction. As already explained, furthermore, ¶ 7 of the Stipulation lacks express language to modify the injunction or the express modification of the injunction through ¶ 83.

Buffets also relies on ¶ 12 of the Stipulation, which provides that the Stipulation is the entire agreement among the parties and supersedes all prior agreements, which Buffets argues includes the prior confirmed plans. But, as the title of the Stipulation reflects, its subject matter was the "allowance of franchise tax claims and dismissal of adversary proceedings." *See* ECF No. 3-9 at 37 (capitalization removed). Its purpose was not to terminate the applicability of the prior plans to FTB's claims. This subject matter/purpose comports with the parties' statement as to their extensive and good-faith negotiations and proposed resolution of the Buffets I and II Claims and the adversary proceeding. *See id.* at 42. It is consistent with utilizing the authority given by the confirmed plans to permit the parties to enter into the Stipulation.

Furthermore, had the Stipulation actually contemplated completely replacing or overriding the confirmed plans, there would have been no need for various provisions within the Stipulation. For instance, ¶ 2 of the Stipulation provides that "FTB shall have no general unsecured claim in Buffets II, and any general unsecured amount asserted by California FTB in the Buffets II Claims is disallowed in its entirety." Similarly, ¶ 3 provides that FTB would "have an allowed priority claim in Buffets II" and further provides that "the allowance of this claim shall supersede any and all priority claims that may have been allowed in Buffets I." To avoid doubt, ¶ 3 emphasized that FTB would only receive payment for the allowed priority claim set forth in the Stipulation and shall not receive separate payment for any priority amounts in Buffets I or II Claims.

Moreover, as already discussed at length with respect to Stipulation ¶ 7, the specificity requirements of the implemented injunctions preclude overriding the prior confirmed plans without complying with those requirements. In general, stipulations between parties, even ones with a provision similar to ¶ 12, does not affect court orders that had been previously issued in accordance with prior agreements of the parties. And even when the prior court order provides some means

15

for parties to modify or terminate the order, as here, the parties must strictly comply with the court's requirements for later revisions.

For these reasons, the Stipulation does not supplant the confirmed plans. Thus, so long as Buffets made its installment payments, FTB was precluded from collecting the tax debt. And as the Bankruptcy Court found, Buffets made its installment payments for the first three years. This Court finds no clear error from this finding of fact. Reviewing the entire evidence, the Court is not left with any definite or firm conviction that the Bankruptcy Court committed any factual mistake.

Having reviewed the legal error *de novo* and finding no clearly erroneous finding of fact, the Court finds that the Bankruptcy Court committed no error when it determined that the Hanging Paragraph applied despite the August 2013 Stipulation and tolled the time periods set forth in § 507(a)(8)(A)(i) and (ii). This resolves Issue 1 presented in this appeal.

## C. Alleged Default

Appellate Issues 3 and 4 relate to whether Buffets had defaulted on the payment plan set out in the Stipulation. Buffets premises its default argument on the fact that it mailed the first two payments at least one business day before it was due even though FTB would not physically receive the payment until after the due date. The Bankruptcy Court found that Buffets had made the first three payments required under the Stipulation without specifically addressing the concept of default. As the undisputed facts show, no one treated those mailings as a default at the time. Even the person in charge of Buffets' tax matters believed that such mailings complied with the Stipulation. Thus, to argue now, well after-the-fact, that the mailings constitute a technical default appears disingenuous.

Moreover, as discussed above, ¶ 83 requires FTB to take certain action before it could exercise any rights to collect the tax due and the undisputed facts show that FTB took no such

action. Furthermore, because ¶ 83 provides a fifteen-day period to cure a default, physically receiving the payment prior to expiration of such period would cure any default before FTB could even take any action. Even if the payments were physically received after that fifteen-day period, the undisputed evidence still shows that the payments were received without any written notice of default. Under the undisputed facts, the date FTB physically received the 2014 and 2015 payments are immaterial. Under the facts presented, this Court finds no legal error whether the Bankruptcy Court found no default or found cured defaults that did not permit FTB to exercise its rights under ¶ 83. It also finds no clear factual error based on the Bankruptcy Court's finding that FTB remained unable to collect the tax debt owed to it. Consequently, neither Appellate Issue 3 nor Issue 4 entitle Buffets to any appellate relief.

Notwithstanding, the fifteen-day provision of ¶ 83, FTB contends that Buffets had not defaulted on any of the first three payments because California law deems payments sent to FTB as received on the day they were mailed. *See* Cal. Gov. Code § 11002. The parties disagree whether that provision applies to affect the meaning of "receive" within the Stipulation. In light of the above analysis, the Court need not address that statute's applicability.

### D. General Summation

After reviewing the bankruptcy record, the orders of the Bankruptcy Court, the arguments of the parties, and the applicable law, the Court rejects Appellant's arguments that the Hanging Paragraph does not apply in this case. The plain language of 11 U.S.C. § 507(a)(8) does not support finding that paragraph inapplicable to serial Chapter 11 bankruptcies. And the parties' Stipulation does not override the confirmed plan set in place by the Delaware Bankruptcy Court in Buffets II. Furthermore, there was no default that permitted FTB to exercise collection efforts in accordance with the injunction and ¶ 83 of the confirmed plan.

Having resolved each of the specific appellate issues against Buffets, the Court finds that the Bankruptcy Court committed no error in determining that FTB's Claim 1632 qualified as a priority claim under § 507(a)(8)(A). Similarly, the Court finds no error in the court's granting FTB's motion for summary judgment and denying the cross-motion filed by Buffets.

There is no dispute that FTB was precluded from collecting the taxes owed by Buffets through the date the Delaware Bankruptcy Court approved the Stipulation. The Bankruptcy Court below, and now this Court on *de novo* review, has determined that the confirmed plan in Buffets II continued to preclude collection efforts through at least the filing of Buffets III, which itself imposed another automatic stay on collection efforts. Therefore, under the Hanging Paragraph, which the Bankruptcy Court below, and now this Court on *de novo* review, has determined to be applicable, the time periods specified in § 507(a)(8)(A) were suspended or tolled. Consequently, FTB's Claim 1632 qualifies as a priority claim and the Bankruptcy Court properly granted summary judgment for FTB, while denying the cross-motion for summary judgment by Buffets.

## V. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the orders of the Bankruptcy Court that (1) granted a motion for summary judgment filed by Appellee, California Franchise Tax Board and allowed Claim 1632 as a priority tax claim; *see* ECF No. 3-13 (Bankr. ECF No. 4223), and (2) denied the Reorganized Debtors' cross-motion for summary judgment, *see id*. (Bankr. ECF No. 4224). Contemporaneously, with this Memorandum Opinion and Order, the Court will issue a final judgment affirming the orders of the Bankruptcy Court.

**SIGNED this 27th day of May 2020.**

JASON PULLIAM
UNITED STATES DISTRICT JUDGE